# United States District Court

UNITED STATES _____ DISTRICT OF SOUTHERN DISTRICT

PLAINTIFF ARTHUR BELFIORE,

                                                **THIRD PARTY SUMMONS IN A**
V. DEFENDANT ~~AND THIRD PARTY PLAINTIFF~~                **CIVIL ACTION**
979 THIRD AVENUE ASSOCIATES, LLC, D&D
BUILDING COMPANY, LLC, COHEN BROTHERS REALTY    CASE NUMBER:    08 CV 2365
CORPORATION AND TRICON CONSTRUCTION SERVICES, INC.

979 THIRD AVENUE ASSOCIATES, LLC D&D BUILDING COMPANY,
LLC, COHEN BROTHERS REALTY CORPORATION,
                    Defendants and Third Party Plaintiffs
V. THIRD PARTY DEFENDANT
DAVID SUTHERLAND SHOWROOMS - NEW YORK LLC,

To: (Name and Address of Third Party Defendant)

David Sutherland Showrooms - New York LLC

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court and serve upon

| PLAINTIFF'S ATTORNEY (name and address) | DEFENDANT AND THIRD-PARTY PLAINTIFF'S ATTORNEY (name and address) |
|---|---|
| Wagner & Wagner, LLP<br>2508 Amboy Road<br>Staten Island, New York   10306 | Hoey, King, Toker & Epstein<br>55 Water Street, 29th Floor<br>New York, New York 10041<br><br>Abrams, Gorelick, Friedman & Jacobson, P.C.<br>Attorneys for Defendant<br>Tricon Construction Services, Inc.<br>One Battery Park Plaza, 4th Floor<br>New York, New York   10004 |

an answer to the third-party complaint which is herewith served upon you within __30____ days after the service of this summons upon you exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the third-party complaint. There is also served upon you herewith a copy of the complaint of the plaintiff. You have the option of answering or not answering the plaintiff's complaint, *unless* (1) this is a case within Rule 9(h) Federal Rules of Civil Procedure, *and* (2) the third-party plaintiff is demanding judgment against *you* in favor of the original plaintiff under the circumstances described in Rule 14(c) Federal Rules of Civil Procedure, in which situation you are required to make your defenses, if any, to the claim of plaintiff as well as to the claim of the third-party plaintiff.

**J. MICHAEL McMAHON**

MAY 0 6 2008

CLERK _____        DATE _____

(BY) DEPUTY CLERK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x        Index No.:  08 CV
ARTHUR BELFIORE,                                  2365

               Plaintiff,

        v.                                      **THIRD-PARTY COMPLAINT**

979 THIRD AVENUE ASSOCIATES, LLC, D&D
BUILDING COMPANY, LLC, COHEN BROTHERS
REALTY CORPORATION AND TRICON CONSTRUCTION
SERVICES, INC.,

             Defendants.
----------------------------------------x
----------------------------------------x
979 THIRD AVENUE ASSOCIATES, LLC, D&D
BUILDING COMPANY, LLC, COHEN BROTHERS
REALTY CORPORATION,
          Third-Party Plaintiffs,

        v.

DAVID SUTHERLAND SHOWROOMS - NEW YORK LLC,

           Third-Party Defendant,
----------------------------------------x

     Defendants/Third-Party Plaintiffs, 979 Third Avenue

Associates, LLC, D&D Building Company, LLC, Cohen Brothers

Realty Corporation (hereinafter "Landlord") by their attorneys,

HOEY, KING, TOKER & EPSTEIN, as and for their Third-Party

Complaint against Third-Party Defendant, David Sutherland

Showrooms - New York LLC (hereinafter "Tenant") respectfully

allege upon information and belief as follows:

    1. Defendant/third-party plaintiff, 979 Third Avenue

Associates, LLC, is a limited liability company duly formed and

RECEIVED
Index No.:
MAY 0 6 2008
U.S.D.C. S.D. N.Y.
CASHIERS

existing under and by virtue of the laws of the State of New York.

2. Defendant/third-party plaintiff, D&D Building Company, LLC, is a limited liability company duly formed and existing under and by virtue of the laws of the State of New York.

3. Defendant/third-party plaintiff, Cohen Brothers Realty Corporation, is a corporation duly formed and existing under and by virtue of the laws of the State of New York.

4. That at all times hereinafter mentioned, the Tenant, was a foreign limited liability company organized and existing under and by virtue of the laws of the State of Texas with its principal place of business at 979 Third Avenue, Room 813, New York, New York 10022.

5. That at all times hereinafter mentioned, the Tenant, was a foreign limited liability company authorized to do business within the State of New York.

6. That at all times hereinafter mentioned, the Tenant, conducted business in the State of New York.

7. That at all times hereinafter mentioned, the Tenant, derived and continues to derive substantial revenue in the State of New York.

8. That heretofore plaintiff, Arthur Belfiore, commenced an action against defendant, Landlord.  A copy of plaintiff's Complaint is annexed as Exhibit "A" and the contents therein are incorporated by reference herein as if more fully set forth at length.  A copy of Landlord's Answer is annexed as Exhibit "B".

### AS AND FOR A FIRST CAUSE OF ACTION
### AGAINST TENANT
### FOR COMMON LAW INDEMNITY

9. Defendants/Third-party Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 8 of this Third-party Complaint.

10. That David Sutherland Showrooms - New York LLC was a tenant at the premises 979 Third Avenue, New York, NY on November 22, 2005.

11. That at all relevant times on or before November 22, 2005, the Tenant, contracted for work to be performed at 979 Third Avenue, New York, New York.

12. That at all relevant times on or before November 22, 2005, the Tenant, hired or retained pursuant to a written contract Tricon Construction Services, Inc. to perform construction work at 979 Third Avenue, New York, New York.

13. That at all relevant times on or before November 22, 2005, All Kindza Flooring, Inc. was hired or retained to perform construction work by the Tenant's contractor, Tricon

Construction Services, Inc. at 979 Third Avenue, New York, New
York.

14. That if the plaintiff sustained injuries and damages in
the manner alleged in plaintiff's Complaint, such injuries and
damages were caused by reason of the negligence of the Tenant,
its agents, servants and/or employees in their control,
maintenance, supervision, inspection, and performance of the
work at 979 Third Avenue, New York, New York.

15. That if plaintiff recovers against the Landlord, The
Landlord will be entitled to common law indemnity from the
Tenant, based upon the principle of common law indemnity.

**AS AND FOR A SECOND CAUSE OF ACTION**
**AGAINST TENANT**
**FOR CONTRIBUTION**

16. Defendants/Third-party Plaintiffs repeat and reallege
each and every allegation contained in paragraphs 1 through 16
of this Third-party Complaint.

17. If plaintiff recovers against the Landlord, the
Landlord will be entitled to an apportionment of responsibility
for damages between and amongst the parties of this action and
will be entitled to recover from the Tenant, for its
proportional share commensurate with any judgment which may be
awarded to the plaintiff.

**AS AND FOR A THIRD CAUSE OF ACTION
AGAINST TENANT
FOR CONTRACTUAL INDEMNIFICATION**

18. Defendants/Third-party Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 18 of this Third-party Complaint.

19. That on prior to November 22, 2005, the Landlord entered into a lease with the Tenant.  A copy of said lease is annexed as Exhibit "C".

20. That $12.01 of the lease provides the Tenant shall indemnify Landlord, and save Landlord harmless from any liability to and claim by or on behalf of any person…arising from (a) from the use by the Tenant of the Demised Premises or from any Improvements whatsoever done by Tenant, its contractor, or from any accident there at, unless due to the gross negligence or willful misconduct of Landlord and (b) from any breach or default by tenant under any terms and conditions of the lease.  Tenant shall also indemnify Landlord from all costs, fees and expenses incurred by Landlord.

21.  The Tenant, is obligated to contractually indemnify the Landlord for any judgment or settlement obtained by plaintiff in this'action including defense costs and attorneys' fees.

### AS AND FOR A FOURTH CAUSE OF ACTION
### AGAINST TENANT
### FOR BREACH OF CONTRACT

22.  Defendants/Third-party Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 - 22 of this Third-party Complaint.

23.  That pursuant to the aforementioned agreement, the Tenant, was to provide liability insurance coverage for bodily injury and to name the landlord as an additional insured on the insurance policy.  Section 9.03 provides "whereby the tenant was to name Landlord (and Landlord's designees) and the Lessor as additional insureds, protecting and indemnifying Landlord and Lessor, against any and all claims for personal injury occurring upon, in or about the demised premises, and the public portions of the building used by tenant, … its contractors, as covered in a standard policy, including without limitation, personal injury resulting from any work performed by or on behalf of Tenant, with coverage of not less than 1 million."

24.  The Tenant, has failed and neglected to perform the conditions of said lease in that the Tenant, failed to obtain the above-insurance coverage for the Landlord pursuant to the aforementioned agreement.

25. That by reason of the foregoing, the Tenant is liable to the Landlord for all damages resulting from the breach including defense costs and attorneys' fees.

WHEREFORE, defendants/third-party plaintiffs demand judgment over and against the Tenant, for any and all such damages recovered by the plaintiff, herein, together with all costs and disbursements and attorneys' fees in connection with this action.

Pursuant to CPLR 3402(b), we give **NOTICE** that the title of this action has been changed from the style of the Complaint of the plaintiff (Exhibit "A") to the style of this SUMMONS and THIRD-PARTY COMPLAINT; the calendar status of this action as of this date is: **"NOT ON THE TRIAL CALENDAR"**.

DATED:   May 5, 2008
         New York, New York

                              Yours, etc.,

                              HOEY, KING, TOKER & EPSTEIN
                              Attorneys for Defendants/Third
                              Party Plaintiffs,
                              **D&D Building Company LLC, Cohen
                              Brothers Realty Corporation and
                              979 Third Avenue Associates LLC**
                              Office and Post Office Address
                              55 Water Street, 29th Floor
                              New York, New York 10041-2899
                              (212) 612-4200

                              By: _____
                                  Angela P. Pensabene (APP 3511)

To:

David Sutherland Showrooms - New York LLC
Third-Party Defendant
CT CORPORATION SYSTEM
111 EIGHTH AVENUE
NEW YORK, NEW YORK 10011

Wagner & Wagner, LLP
Attorneys for Plaintiff, Arthur Belfiore
2508 Amboy Road
Staten Island, New York 10306

Abrams, Gorelick, Friedman & Jacobson, PC
Attorneys for Defendant,
Tricon Construction Services, Inc.
One Battery Park Plaza, 4th Floor
New York, New York 10004

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

Southern _____ District of ___ New York _____ (ECF CASE)

Arthur Bellore

V.

979 Third Avenue Associates, LLC, D&D Building
Company, LLC, Cohen Brothers Realty
Corporation and Tricon Construction Services Inc

## SUMMONS IN A CIVIL ACTION

CASE NUMBER:

## 08 CV 2365

## JUDGE PRESKA

TO: (Name and address of Defendant)

979 Third Avenue Associates, LLC, c/o Eva Hart Rice, MD, 258 Bedford
Banksville Road, Bedford, NY 10508
D&D Building Company, LLC, c/o Cohen Brothers Realty Corporation,
750 Lexington Avenue, NY, NY 10022
Cohen Brothers Realty Corporation, 750 Lexington Ave., NY, NY 10022
Tricon Construction Services, Inc., 979 Third Avenue, NY, NY 10022

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Wagner & Wagner, LLP, 2508 Amboy Road, Staten Island, NY 10306

an answer to the complaint which is served on you with this summons, within _____ 20 _____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

_____                    MAR 0 6 2008
CLERK                                              DATE

_____
(By) DEPUTY CLERK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**JUDGE PRESKA**
*(LAP)(RLE)*
ECF CASE

---------------------------------------------------------------x

ARTHUR BELFIORE,

                       Plaintiff (s),

Civil #: 08-CV-

**08 CV 2365**

      -against-

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

979 THIRD AVENUE ASSOCIATES, LLC,
D&D BUILDING COMPANY, LLC, COHEN
BROTHERS REALTY CORPORATION and
TRICON CONSTRUCTION SERVICES, INC.,

**VERIFIED COMPLAINT**

                      Defendant(s).

---------------------------------------------------------------x

Plaintiff, complaining of the defendants, by his attorneys, WAGNER & WAGNER, LLP,

hereby alleges the following upon information and belief:



## JURISDICTIONAL ALLEGATIONS

### Subject Matter Jurisdiction – Diversity of Citizenship

1.    That at all times hereinafter mentioned, the Plaintiff was, at all times mentioned

herein, and still is a citizen and resident of the State of New Jersey.

2.    That at all times hereinafter mentioned, upon information and belief, defendant,

979 Third Avenue Associates, LLC, was, at all times mentioned herein, and still is

a limited liability company duly formed and existing under and by virtue of the

laws of the State of New York.

3.    That at all times hereinafter mentioned, upon information and belief, defendant,

D&D Building Company, LLC, was, at all times mentioned herein, and still is a

limited liability company duly formed and existing under and by virtue of the laws
of the State of New York.

4.  That at all times hereinafter mentioned, upon information and belief, defendant,
Cohen Brothers Realty Corporation, was, at all times mentioned herein, and still is
a corporation duly formed and existing under and by virtue of the laws of the State
of New York.

5.  That at all times hereinafter mentioned, upon information and belief, defendant,
Tricon Construction Services, Inc., was, at all times mentioned herein, and still is
a corporation duly formed and existing under and by virtue of the laws of the State
of New York.

6.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that
the plaintiff is a citizen and resident of the State of New Jersey; the defendant, 979
Third Avenue Associates, LLC, is a limited liability company duly formed and
existing under and by virtue of the laws of the State of New York; the defendant,
D&D Building Company, LLC, is a  limited liability company duly formed and
existing under and by virtue of the laws of the State of New York; the defendant,
Cohen Brothers Realty Corporation is a corporation duly formed and existing
under and by virtue of the laws of the State of New York; the defendant, Tricon
Construction Services, Inc., is a corporation duly formed and existing under and
by virtue of the laws of the State of New York; and the amount in controversy,
exclusive of interest and costs, exceeds the sum of Seventy-Five Thousand
($75,000.00) Dollars.

### Venue

7. The venue of this action in the Southern District of New York is proper pursuant to 28 U.S.C. § 1391(a), in that jurisdiction is founded only on diversity of citizenship and the Southern District of New York is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

### AS AND FOR A FIRST CAUSE OF ACTION

8. Plaintiff, Arthur Belfiore, repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "7" of this Complaint, with the same force and effect as though same were more fully set forth at length herein.

9. That this action falls within one or more of the exemptions set forth in CPLR § 1602.

10. That at all times hereinafter mentioned and upon information and belief, defendant, 979 Third Avenue Associates, LLC, owned the premises known as and by 979 Third Avenue, in the City, County and State of New York (hereinafter, "the Premises.")

11. That at all times hereinafter mentioned, and upon information and belief, defendants, jointly and/or severally, directly and/or indirectly, and through, their agents, servants and/or employees, operated the Premises.

12. That at all times hereinafter mentioned, and upon information and belief, defendants, jointly and/or severally, directly and/or indirectly, and through, their agents, servants and/or employees, maintained the Premises.

13.    That at all times hereinafter mentioned, and upon information and belief, defendants, jointly and/or severally, directly and/or indirectly, and through, their agents, servants and/or employees, controlled the Premises.

14.    That at all times hereinafter mentioned, and upon information and belief, defendants, jointly and/or severally, directly and/or indirectly, and through, their agents, servants and/or employees, managed the Premises.

15.    That at all times hereinafter mentioned, and upon information and belief, and on or prior to November 22, 2005, defendant, Tricon Construction Services, Inc., was hired and/or retained to act as a contractor for construction, renovation, alteration and/or demolition at the Premises.

16.    That at all times hereinafter mentioned, and upon information and belief, and on or prior to November 22, 2005, defendant, Tricon Construction Services, Inc., was hired and/or retained pursuant to a written contract and/or agreement to perform construction, renovation, alteration and/or demolition at the Premises.

17.    Upon information and belief, that at all times herein mentioned, All Kindza Flooring, Inc. was a corporation duly organized and existing under and by virtue of the laws of the State of New York or was a foreign corporation authorized to transact business in the State of New York

18.    That at all times hereinafter mentioned and prior thereto and on or prior to November 22, 2005, All Kindza Flooring, Inc. was hired and/or retained pursuant to a written contract and/or agreement to perform construction, renovation, alteration and/or demolition work at the Premises.

19. That at all times hereinafter mentioned and prior thereto and on or prior to November 22, 2005, All Kindza Flooring, Inc., hired and/or retained plaintiff, Arthur Belfiore, to perform construction, renovation, alteration and/or demolition work at the Premises.

20. That plaintiff, Arthur Belfiore, was employed, hired and/or retained by All Kindza Flooring, Inc., pursuant to a written or oral contract or agreement.

21. That on November 22, 2005, the plaintiff, Arthur Belfiore, was an employee of All Kindza Flooring, Inc.

22. That at all times hereinafter mentioned and prior thereto and on or prior to November 22, 2005, the defendants, their agents, servants and/or employees were engaged in performing construction, renovation, alteration and/or demolition work, labor and/or services at the Premises.

23. That on November 22, 2005, plaintiff, Arthur Belfiore, was instructed to perform construction, renovation, alteration and/or demolition work at the Premises by his employer, All Kindza Flooring, Inc.

24. That the defendants, jointly and/or severally, directly and/or indirectly, through their agents, servants and/or employees had the duty to provide the plaintiff with a safe place to work upon the Premises (hereinafter "worksite.")

25. That the defendants, jointly and/or severally, directly and/or indirectly, through their agents, servants and/or employees had the non-delegable duty to see that the worksite was kept reasonably safe and free of dangers and hazards to those workers lawfully thereat.

Page 5 of 10

26.  That on November 22, 2005, while plaintiff, Arthur Belfiore, was lawfully and
carefully working at the Premises, he was caused to fall by reason of the
negligence of the defendants, their agents, servants and/or employees in the
ownership, operation, direction, supervision, possession, control, construction,
rehabilitation and/or alteration of the said premises.

27.  That as a result of the foregoing, plaintiff, Arthur Belfiore, sustained personal
injuries.

28.  That the defendants, their agents, servants and/or employees were negligent,
reckless and careless in the ownership, operation, maintenance, control,
possession, supervision, direction, construction, inspection, management,
renovation, rehabilitation and/or alteration of the said premises under the common
law standards of negligence of the State of New York.

29.  That the defendants, their agents, servants and/or employees were further
negligent, reckless and careless in the ownership, operation, maintenance, control,
possession, supervision, direction, construction, inspection, management,
renovation, rehabilitation and/or alteration of the said premises in that they failed
to provide the plaintiff with a safe place to work; failed to provide the plaintiff
with a hazard-free work place; failed to provide the plaintiff with proper and safe
ramp; failed to provide the plaintiff with proper and approved safety devices so
placed, fixed and/or secured so as to afford proper protection to the plaintiff
working thereat; violated the applicable provisions of the Labor Law of the State
of New York, the Industrial Code of the State of New York, including Labor Law

Page 6 of 10

Sections 240(1), 241(6) and 200 and the provisions of the Industrial Code as they pertain to construction; failed to inspect the work areas on the date of the accident and prior thereto to see that said worksite was safe; and, failed to provide the plaintiff with any safety devices to prevent plaintiff from falling on said ramp.

30.  That the defendants, their agents, servants and/or employees had actual and/or constructive notice of the dangerous and defective conditions existing upon the worksite.

31.  That the accident and the injuries resulting therefrom were caused solely and wholly by reason of the negligence of the defendants, their agents, servants and/or employees without any fault, want of care or culpable conduct on the part of the plaintiff contributing thereto.

32.  That by reason of the foregoing, the plaintiff has been rendered sick, sore, lame maimed and disabled and so remains. That he has been unable to attend to his usual vocation and activities and that he has been obliged to expend and will expend in the future, sums of money for medical aid and attention, and has otherwise been damaged in the sum of One Million ($1,000,000.00) Dollars.

## AS AND FOR A SECOND CAUSE OF ACTION

33.  Plaintiff, Arthur Belfiore, repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "32" of this Complaint, with the same force and effect as though same were more fully set forth at length herein.

34.  That on November 22, 2005, there existed in full force and effect within the State of New York, Section 200 of the Labor Law of the State of New York.

Page 7 of 10

35.   That by reason of the negligence of the defendants as aforesaid, the said

defendants violated Section 200 of the Labor Law of the State of New York.

36.   That by reason of the foregoing, the plaintiff has been damaged in the sum of One

Million ($1,000,000.00) Dollars.

### AS AND FOR A THIRD CAUSE OF ACTION

37.   Plaintiff, Arthur Belfiore, repeats, reiterates and realleges each and every

allegation contained in paragraphs "1" through "32" of this Complaint, with the

same force and effect as though same were more fully set forth at length herein.

38.   That on November 22, 2005, there existed in full force and effect within the State

of New York, Section 240 of the Labor Law of the State of New York.

39.   That by reason of the negligence of the defendants as aforesaid, the said

defendants violated Section 240 of the Labor Law of the State of New York.

40.   That by reason of the foregoing, the plaintiff has been damaged in the sum of One

Million ($1,000,000.00) Dollars.

### AS AND FOR A FOURTH CAUSE OF ACTION

41.   Plaintiff, Arthur Belfiore, repeats, reiterates and realleges each and every

allegation contained in paragraphs "1" through "32" of this Complaint, with the

same force and effect as though same were more fully set forth at length herein.

42.   That on November 22, 2005, there existed in full force and effect within the State

of New York, Section 241 of the Labor Law of the State of New York.

43.   That by reason of the negligence of the defendants as aforesaid, the said

defendants violated Section 241 of the Labor Law of the State of New York.

Page 8 of 10

44.    That by reason of the foregoing, the plaintiff has been damaged in the sum of One Million ($1,000,000.00) Dollars.

### AS AND FOR A FIFTH CAUSE OF ACTION

45.    Plaintiff, Arthur Belfiore, repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "32" of this Complaint, with the same force and effect as though same were more fully set forth at length herein.

46.    That on November 22, 2005, there existed in full force and effect within the State of New York, Rule 23 of the Industrial Code of the State of New York.

47.    That by reason of the negligence of the defendants as aforesaid, the said defendants violated the applicable sections of Rule 23 of the Industrial Code of the State of New York.

48.    That by reason of the foregoing, the plaintiff has been damaged in the sum of One Million ($1,000,000.00) Dollars.

WHEREFORE, Plaintiffs demand judgment against the defendants in the sum of One Million ($1,000,000.00) Dollars on the First Cause of Action; One Million ($1,000,000.00) Dollars on the Second Cause of Action; One Million ($1,000,000.00) Dollars on the Third Cause of Action; One Million ($1,000,000.00) Dollars on the Fourth Cause of Action; One Million ($1,000,000.00) Dollars on the Fifth Cause of Action; all together with the costs and disbursement of this action.

Dated: Staten Island, New York
       March 5, 2008

Yours, etc.

*Edward Wagner*

EDWARD WAGNER, ESQ.

**WAGNER & WAGNER, LLP**
Attorneys for Plaintiff(s)
Office and Post Office Address
2508 Amboy Road
Staten Island, New York 10306
(718) 667-7400

Page 10 of 10

## INDIVIDUAL VERIFICATION

State of New York         )
                          )    s.s.:
County of Richmond        )

Arthur Belfiore, being duly sworn, deposes and says that I am a Plaintiff in the within

action; I have read the foregoing Complaint and know the contents thereof; the same is true to

my own knowledge, except as to the matters therein stated to be alleged upon information and

belief, and as to those matters, I believe it to be true.

X _____
   Arthur Belfiore

Sworn to before me this 5th
day of _March_____, 20 08

_____
   Notary Public

EDWARD WAGNER
Notary Public, State of New York
No. 4... 
Qualified in Richmond County 201 0
Commission Expires Dec. 15, ___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Civil #: 08-CV- _2365_
(LAP)(RLE)

---

ARTHUR BELFIORE,

*Plaintiff(s),*

*against*

979 THIRD AVENUE ASSOCIATES, LLC, D&D BUILDING COMPANY, LLC, COHEN BROTHERS REALTY CORPORATION and TRICON CONSTRUCTION SERVICES, INC.,

*Defendant(s).*

---

## VERIFIED COMPLAINT

---

WAGNER & WAGNER, LLP
Attorneys for Plaintiff(s)
2508 Amboy Road
Staten Island, New York 10306
(718) 667-7400

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x    08 CV 2365
ARTHUR DELFINO,

                    Plaintiff,                      **FEDERAL RULE 7.1**
                                                         **STATEMENT**
          v.

979 THIRD AVENUE ASSOCIATES, LLC, D&D
BUILDING COMPANY, LLC, COHEN BROTHERS
REALTY CORPORATION AND TRICON CONSTRUCTION
SERVICES, INC.,

                    Defendants.
------------------------------------x

     Pursuant to Federal Rule 7.1 of the Federal Rules of Civil
Procedure and to enable judges and magistrates of the Court to
evaluate possible disqualification or recusal, the undersigned
attorney of record for 979 Third Avenue Associates, LLC, D&D
Building Company LLC and Cohen Brothers Realty Corporation,
certifies that the following are corporate parents,
subsidiaries, or affiliates of that party: NONE.

DATED: March 20, 2008
       New York, New York

                              Yours, Etc.

                              HOEY, KING, TOKER & EPSTEIN
                              Attorneys for **Defendants**
                              **D&D BUILDING COMPANY LLC AND COHEN**
                              **BROTHERS REALTY CORPORATION**
                              Office and Post Office Address
                              55 Water Street, 29th Floor
                              New York, New York 10041-2899
                              (212) 612-4200

                              By:

                              _____
                              Angela P. Pensabene (APP 3511)

To:

Wagner & Wagner, LLP
Attorneys for Plaintiff, Arthur Belfiore
2508 Amboy Road
Staten Island, New York 10306

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x    08 CV 2365
ARTHUR BELFIORE,

                Plaintiff,

        v.                    **VERIFIED ANSWER TO**
                              **COMPLAINT**

979 THIRD AVENUE ASSOCIATES, LLC, D&D    **JURY DEMANDED**
BUILDING COMPANY, LLC, COHEN BROTHERS
REALTY CORPORATION AND TRICON
CONSTRUCTION SERVICES, INC.,

                Defendants.
------------------------------------x

      Defendants, 979 Third Avenue Associates, LLC, D&D Building

Company LLC and Cohen Brothers Realty Corporation, by their

attorneys, HOEY, KING, TOKER & EPSTEIN, answer the Complaint of

the Plaintiff by stating as follows:

      1.    Deny having knowledge or information sufficient to form a

belief as to the truth of the allegations of paragraph 1.

      2.    Admit the allegations of paragraph 2.

      3.    Admit the allegations of paragraph 3

      4.    Admit the allegations of paragraph 4.

      5.    Deny having knowledge or information sufficient to form a

belief as to the truth of the allegations of paragraph 5.

      6.    Deny having knowledge or information sufficient to form a

belief as to the truth of the allegations of paragraph 6 and

respectfully refers all questions of law to this Honorable Court.

7.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 7 and respectfully refers all questions of law to this Honorable Court.

8.    Respond to paragraph 8 of the Complaint by repeating, reiterating, and realleging all responses given to the paragraphs referred to therein with the same force and effect as if herein set forth at length.

9.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 9 and respectfully refers all questions of law to this Honorable Court.

10.   Admit the allegations of paragraph 10.

11.   Deny, upon information and belief, the allegations of paragraph 11 and respectfully refers all questions of law to this Honorable Court.

12.   Deny, upon information and belief, the allegations of paragraph 12 and respectfully refers all questions of law to this Honorable Court.

13.   Deny, upon information and belief, the allegations of paragraph 13 and respectfully refers all questions of law to this Honorable Court.

14.   Deny, upon information and belief, the allegations of paragraph 14 and respectfully refers all questions of law to this Honorable Court.

15.   Deny, upon information and belief, the allegations of paragraph 15.

16.   Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 16.

17.   Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 17.

18.   Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 18.

19.   Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 19.

20.   Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 20.

21.   Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 21.

22.   Deny, upon information and belief, the allegations of paragraph 22 and respectfully refers all questions of law to this Honorable Court.

23.   Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 23.

24.   Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 24 and respectfully refers all questions of law to this Honorable Court.

25.   Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 25 and respectfully refers all questions of law to this Honorable Court.

26.   Deny, upon information and belief, the allegations of paragraph 26.

27. Deny, upon information and belief, the allegations of paragraph 27.

28. Deny, upon information and belief, the allegations of paragraph 28.

29. Deny, upon information and belief, the allegations of paragraph 29.

30. Deny, upon information and belief, the allegations of paragraph 30.

31. Deny, upon information and belief, the allegations of paragraph 31.

32. Deny, upon information and belief, the allegations of paragraph 32.

33. Respond to paragraph 33 of the Complaint by repeating, reiterating, and realleging all responses given to the paragraphs referred to therein with the same force and effect as if herein set forth at length.

34. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 34 and respectfully refers all questions of law to this Honorable Court.

35. Deny, upon information and belief, the allegations of paragraph 35.

36. Deny, upon information and belief, the allegations of paragraph 36.

37. Respond to paragraph 37 of the Complaint by repeating, reiterating, and realleging all responses given to the paragraphs

referred to therein with the same force and effect as if herein set forth at length.

38.   Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 38 and respectfully refers all questions of law to this Honorable Court.

39.   Deny, upon information and belief, the allegations of paragraph 39.

40.   Deny, upon information and belief, the allegations of paragraph 40.

41.   Respond to paragraph 41 of the Complaint by repeating, reiterating, and realleging all responses given to the paragraphs referred to therein with the same force and effect as if herein set forth at length.

42.   Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 42 and respectfully refers all questions of law to this Honorable Court.

43.   Deny, upon information and belief, the allegations of paragraph 43.

44.   Deny, upon information and belief, the allegations of paragraph 44.

45.   Respond to paragraph 45 of the Complaint by repeating, reiterating, and realleging all responses given to the paragraphs referred to therein with the same force and effect as if herein set forth at length.

46. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 46 and respectfully refers all questions of law to this Honorable Court.

47. Deny, upon information and belief, the allegations of paragraph 47.

48. Deny, upon information and belief, the allegations of paragraph 48.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE THESE ANSWERING DEFENDANTS ALLEGE AS FOLLOWS:

49. The injuries alleged to have been suffered by the Plaintiff were caused, in whole or part, by the conduct of Plaintiff. Plaintiff's claims therefore are barred or diminished in the proportion that such culpable conduct of Plaintiff bears to the total culpable conduct causing the damages.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE THESE ANSWERING DEFENDANTS ALLEGE AS FOLLOWS:

50. The injuries and damages alleged in the Complaint were caused or contributed to by the culpable conduct including contributory negligence, assumption of the risk and/or product misuse of persons over whom these Defendants had no authority or control.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE THESE ANSWERING DEFENDANTS ALLEGE AS FOLLOWS:

51. Pursuant to CPLR Article 16, the liability of these Defendant's to the Plaintiff for non-economic loss shall not exceed the equitable share of these Defendants determined in accordance with

the relative culpability of each person/party causing or contributing to the total liability for non-economic loss.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE THESE ANSWERING DEFENDANTS ALLEGE AS FOLLOWS:

52.   That recovery, if any, on the Complaint of the Plaintiff shall be reduced by the amounts paid or reimbursed by collateral sources in accordance with CPLR 4545(c).

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE THESE ANSWERING DEFENDANTS ALLEGE AS FOLLOWS:

53.   That if it is determined that these answering Defendants are responsible for the acts alleged in the Complaint then Plaintiff failed to take appropriate action to mitigate any damages.

## AS AND FOR A CROSS-CLAIM FOR CONTRIBUTION AGAINST: TRICON CONSTRUCTION SERVICES, INC.

54.   If any plaintiff recovers against these Defendants, then these Defendants will be entitled to an apportionment of responsibility for damages between and amongst the parties of this action and will be entitled to recover from each other party for its proportional share commensurate with any judgment which may be awarded to the plaintiff.

## AS AND FOR A CROSS-CLAIM FOR COMMON LAW INDEMNITY AGAINST: TRICON CONSTRUCTION SERVICES, INC.

55.   If any plaintiff recovers against these Defendants, then these Defendants will be entitled to be indemnified and to recover the full amount of any judgment from Tricon Construction Services, Inc.

**AS AND FOR A CROSS-CLAIM FOR CONTRACTUAL INDEMNITY AGAINST: TRICON CONSTRUCTION SERVICES, INC.**

56. At the time of the accident alleged in the complaint a contract was in effect between these Defendants and Tricon Construction Services, Inc..

57. The contract required Tricon Construction Services, Inc. to indemnify and, or hold harmless these Defendants for all claims, losses, liability and damages for any injury to any person.

58. Tricon Construction Services, Inc. breached the contract and is obligated to indemnify these Defendants for any judgment or settlement obtained by any plaintiff in this action including defense costs and attorneys' fees.

**AS AND FOR A CROSS-CLAIM FOR BREACH OF CONTRACT FOR FAILURE TO NAME ON INSURANCE POLICY AGAINST: TRICON CONSTRUCTION SERVICES, INC.**

59. At the time of the accident alleged in the complaint a contract was in effect between these Defendants and Tricon Construction Services, Inc.

60. The contract required Tricon Construction Services, Inc. to purchase liability insurance for the benefit of these Defendants.

61. Tricon Construction Services, Inc. failed to purchase the insurance required and thereby breached the contract.

62. By reason of the foregoing, Tricon Construction Services, Inc. is liable to these answering Defendants for all damages resulting from the breach including defense costs and attorneys' fees.

WHEREFORE, these Defendants demand judgment dismissing the Complaint, together with costs and disbursements, and in the event any judgment or settlement is recovered herein against these Defendants, then these Defendants further demand that such judgment be reduced by the amount which is proportionate to the degree of culpability of any plaintiff, and these Defendants further demand judgment against each other party on the respective crossclaims and/or counterclaims.

DATED: March 20, 2008
       New York, New York

                              Yours, etc.

                              HOEY, KING, TOKER & EPSTEIN
                              Attorneys for **Defendants**
                              **979 THIRD AVENUE ASSOCIATES, LLC**
                              **D&D BUILDING COMPANY LLC AND COHEN**
                              **BROTHERS REALTY CORPORATION**
                              Office and Post Office Address
                              55 Water Street, 29th Floor
                              New York, New York 10041-2899
                              (212) 612-4200

                              By:

                              Angela G. Pensabene (APP 3511)

To:

Wagner & Wagner, LLP
Attorneys for Plaintiff, Arthur Belfiore
2508 Amboy Road
Staten Island, New York 10306

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------x          Index No.: 08 CV 2365
ARTHUR BELFIORE,

                        Plaintiff,                **VERIFICATION**

        v.

979 THIRD AVENUE ASSOCIATES, LLC, D&D
BUILDING COMPANY, LLC, COHEN BROTHERS
REALTY CORPORATION AND TRICON CONSTRUCTION
SERVICES, INC.,

                        Defendants.
---------------------------------------x

        The undersigned being duly sworn, states that I am the

_____ of D&D Building Company LLC, one of

the defendants in the above-captioned matter, and have read the

contents of the attached ANSWER and believe it to be true based

on the information that I have available.


                                          _____
                                          By: CHARLES S COHEN (print name)
                                          For: D&D Building Company LLC

Sworn and subscribed
before me on MARCH 28, 2008

_____
Notary Public

**MADELINE C. CITRONE**
Notary Public, State of New York
No. 01MA6030446
Qualified in Westchester County
Commission Expires Sept. 13, 2009

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------x          Index No.: 08 CV 2365
ARTHUR BELFIORE,

       Plaintiff,        **VERIFICATION**

    v.

979 THIRD AVENUE ASSOCIATES, LLC, D&D
BUILDING COMPANY, LLC, COHEN BROTHERS
REALTY CORPORATION AND TRICON CONSTRUCTION
SERVICES, INC.,

       Defendants.
---------------------------------------x

    The undersigned being duly sworn, states that I am the

_____ *VICE PRESIDENT* _____ of Cohen Brothers Realty Corporation,

one of the defendants in the above-captioned matter, and have

read the contents of the attached ANSWER and believe it to be

true based on the information that I have available.


By: *KENNETH KAY* (print name)
For: Cohen Brothers Realty
Corporation


Sworn and subscribed
before me on *MARCH 26, 2008*

*Madeline C. Citrone*
Notary Public

**MADELINE C. CITRONE**
**Notary Public, State of New York**
**No. 01MA6030446**
**Qualified in Westchester County**
**Commission Expires Sept. 13, 2009**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x      Index No.: 08 CV 2365
ARTHUR BELFIORE,

                    Plaintiff,                    **VERIFICATION**

          v.

979 THIRD AVENUE ASSOCIATES, LLC, D&D
BUILDING COMPANY, LLC, COHEN BROTHERS
REALTY CORPORATION AND TRICON CONSTRUCTION
SERVICES, INC.,

                    Defendants.
------------------------------------x

     The undersigned being duly sworn, states that I am ~~the~~ a
_Manager Member_ of 979 Third Avenue Associates LLC,
one of the defendants in the above-captioned matter, and have
read the contents of the attached ANSWER and believe it to be
true based on the information that I have available.

                              _____
                              By: _Eve Hart Rice_ (print name)
                              For: 979 Third Avenue Associates
                              LLC

Sworn and subscribed
before me on

_____
Notary Public
              **ANNE CURRAN**
       **Notary Public, State of New York**
            **No. 01CU6121781**
       **Qualified in Westchester County**
     **Commission Expires January 31, 20___**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------x    08 CV 2365
ARTHUR BELFIORE,

            Plaintiff,

                                   **AFFIDAVIT OF SERVICE**

     v.

979 THIRD AVENUE ASSOCIATES, LLC, D&D
BUILDING COMPANY, LLC, COHEN BROTHERS
REALTY CORPORATION AND TRICON CONSTRUCTION
SERVICES, INC.,

            Defendants.
---------------------------------------x
STATE OF NEW YORK  )
                 ss.
COUNTY OF NEW YORK )


Maria SanJose, being duly sworn, deposes and says:

1. That I am over the age of eighteen years and not a party to
   this action and reside in the City of Brooklyn, County of
   Kings and the State of New York.

2. That on March 20, 2008, I served upon:

   > Wagner & Wagner, LLP
   > Attorneys for Plaintiff, Arthur Belfiore
   > 2508 Amboy Road
   > Staten Island, New York 10306

A true copy of the annexed **VERIFIED ANSWER TO COMPLAINT AND
FEDERAL AND RULE 7.1 STATEMENT** by depositing it endorsed in a
postpaid properly addressed wrapper, in a post office or,
official depository under the exclusive care and custody of the
United States Postal Service within the State of New York, at

the address designated by him or her upon the last paper served
by him or her in the action.

DATED: March 20, 2008
       New York, New York

_____
       Maria SanJose

Sworn and subscribed
Before me on March 20, 2008

_____
Notary Public

HELANE SOLOMON
Notary Public, State of New York
No. 41-4918530
Qualified in Queens County
Commission Expires February 1, 20 10

08 CV 2365

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------

ARTHUR BELFIORE,

                    Plaintiff,

          -against-

979 THIRD AVENUE ASSOCIATES, LLC, D&D BUILDING
COMPANY, LLC, COHEN BROTHERS REALTY CORPORATION AND
TRICON CONSTRUCTION SERVICES, INC.,

                    Defendants.

----------------------------------------------------------------

**VERIFIED ANSWER TO COMPLAINT AND FEDERAL AND RULE 7.1 STATEMENT**

----------------------------------------------------------------

HOEY, KING, TOKER & EPSTEIN
Attorneys for Defendants
**979 Third Avenue Associates, LLC, D&D Building Company LLC
and Cohen Brothers Realty Corporation**
Office and Post Office Address
55 Water Street, 29th Floor
New York, New York 10041-2899
212) 612-4200

However, in any event, Landlord shall not have any personal liability or obligation by reason of any default by Landlord under any of Landlord's covenants and agreements in this Lease. In case of such default, Tenant will look only to Landlord's estate, as Lessee, under the Net Lease or under any other ground or underlying lease covering the premises described in the Net Lease, to recover any loss or damage resulting therefrom; and Tenant shall have no right to nor shall Tenant assert any claim against nor have recourse to Landlord's other property or assets to recover such loss or damage.

Section 30.03.    All pronouns or any variation thereof shall be deemed to refer to masculine, feminine or neuter, singular or plural as the identity of the person or persons may require; and if Tenant shall consist of more than one (1) person, the obligations of such persons, as Tenant, under this Lease, shall be joint and several.

## ARTICLE 31

### Notices

Any notice, statement, certificate, request, approval, consent or demand required or permitted to be given under this Lease shall be in writing sent by registered or certified mail (or reputable, commercial overnight courier service), return receipt requested and postage prepaid, addressed, as the case may be, to Landlord, at 750 Lexington Avenue, New York, New York 10022, and to Tenant at the Demised Premises, or to such other addresses as Landlord or Tenant respectively shall designate in the manner herein provided.    Such notice, statement, certificate, request, approval, consent or demand shall be deemed to have been given on the date when received, as aforesaid, or refusal to accept delivery. Notices on behalf of either party may be sent by the counsel for such party.

## ARTICLE 32

### No Waiver; Entire Agreement

Section 32.01.    The specific remedies to which Landlord may resort under the provisions of this Lease are cumulative and are not intended to be exclusive of any other remedies or means of redress to which Landlord may be lawfully entitled in case of any breach or threatened breach by Tenant of any of the terms, covenants and conditions of this Lease. The failure of Landlord to insist upon the strict performance of any of the terms, covenants and conditions of this Lease, or to exercise any right or remedy herein contained, shall not be construed as a waiver or relinquishment for the future of such term, covenant, condition, right or remedy. A

receipt by Landlord of minimum rent or additional rent with knowledge of the breach of any term, covenant or condition of this Lease shall not be deemed a waiver of such breach. This Lease may not be changed or terminated orally. In addition to the other remedies in this Lease provided, Landlord shall be entitled to restraint by injunction of the violation or attempted or threatened violation of any of the terms, covenants and conditions of this Lease or to a decree, any court having jurisdiction in the matter, compelling performance of any such terms, covenants and conditions.

Section 32.02.    No receipt of monies by Landlord from Tenant, after any re-entry or after the cancellation or termination of this Lease in any lawful manner, shall reinstate the Lease; and after the service of notice to terminate this Lease, or after commencement of any action, proceeding or other remedy, Landlord may demand, receive and collect any monies due, and apply them on account of Tenant's obligations under this Lease but without in any respect affecting such notice, action, proceeding or remedy, except that if a money judgment is being sought in any such action or proceeding, the amount of such judgment shall be reduced by such payment.

Section 32.03.    If Tenant is in arrears in the payment of minimum rent or additional rent, Tenant waives its right, if any, to designate the items in arrears against which any payments made by Tenant are to be credited and Landlord may apply any of such payments to any such items in arrears as Landlord, in its sole discretion, shall determine, irrespective of any designation or request by Tenant as to the items against which any such payments shall be credited.

Section 32.04.    No payment by Tenant nor receipt by Landlord of a lesser amount than may be required to be paid hereunder shall be deemed to be other than on account of any such payment, nor shall any endorsement or statement on any check or any letter accompanying any check tendered as payment be deemed an accord and satisfaction and Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance of such payment due or pursue any other remedy in this Lease provided.

Section 32.05.    This Lease and the Schedules annexed hereto constitute the entire agreement between Landlord and Tenant referable to the Demised Premises, and all prior negotiations and agreements are merged herein.

Section 32.06.    If any term or provision of this Lease or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Lease, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Lease shall be valid and be enforced to the fullest extent permitted by law.

Section 32.07.    Tenant acknowledges that Landlord will contract or has contracted with one or more providers of telecommunications services for the

installation of cable, wire and related electrical, electronic or mechanical devices in the Building sufficient to provide telecommunications services to the Demised Premises, and Tenant agrees to engage such a provider, as designated by Landlord, to provide such services, unless another provider is selected by Tenant and approved by Landlord, which approval shall not be unreasonably withheld, conditioned or delayed.

Section 32.08.    It is understood and agreed that this Lease is submitted to Tenant on the understanding that it shall not be considered an offer and shall not bind Landlord in any way whatsoever until (i) Tenant has duly executed and delivered duplicate originals to Landlord, and (ii) Landlord has executed and delivered one of said fully executed originals to Tenant.

Section 32.09.    Landlord understands that certain personal property located within the Demised Premises belong to third parties by way of consignment and Tenant's furniture, fixtures and equipment and personal property is pledged or may be pledged to a lending institution.  Landlord hereby waives any statutory lien afforded Landlord under the laws of the State of New York with respect to such personal property.

## ARTICLE 33

### Merchandise Approval

Section 33.01.    The Demised Premises shall be used and occupied only for the purposes set forth in Article 4.  Tenant acknowledges that Landlord has carefully selected tenants for the Building and has exercised certain control over the merchandise and products to be displayed and marketed by tenants in order to produce a certain mix of tenant uses, and type and quality of product.  Tenant shall not make any change in the use of the Demised Premises or in the type or quality of product displayed and marketed by Tenant without Landlord's consent which will not be unreasonably withheld, delayed or conditioned.

Section 33.02.    Neither Tenant nor any other occupant of the Demised Premises will sell merchandise, except antiques, that is other than of its own manufacture, or made under subcontract for it; produced by a manufacturer(s) for which Tenant acts as agent, sales representative or importer; or purchased directly from a manufacturer or authorized distributor.

Section 33.03.    No merchandise offered for sale at the Demised Premises shall in the regular course of the business of Tenant or any other occupant be sold other than to, or through, the medium of dealers, specifiers, purchasing agencies, interior designers, architects, and/or other decorators recognized as such by the trade and/or in the manner commonly accepted as wholesale. Without limiting the foregoing, neither Tenant nor any other occupant shall sell its merchandise at

retail directly to the public or advertise or conduct at the Demised Premises any distress, fire, bankruptcy, liquidation, clearance, relocation, closing or going-out-of-business sale or any other discount operations.

Section 33.04.     Tenant agrees that it shall not permit any selling agents, sales representatives, salespeople or vendors of any kind, other than its own employees, to conduct business in the Demised Premises, nor shall it rent, license, sublet, share space or services therein or otherwise license or convey an interest in any part of the Demised Premises, whether on an exclusive or non-exclusive basis, to any other party.   Tenant shall not by itself or through any officer, salesman, employee, agent, advertisement or otherwise solicit business in the vestibules, entrances, elevator lobbies, corridors, hallways, elevators or other common areas of the Building.

Section 33.05.     The parties agree that the uses and tenant mix of the Building are crucial to the success of the Building and that, for purposes of maintaining control of the use and tenant mix of the Building, the Building shall be characterized as a "shopping center" with respect to Tenant's use of the Demised Premises and the Building. The parties intend that the Federal Bankruptcy Act shall not override Landlord's control over the tenant mix and use of the Building and that, in all events, Landlord shall not be estopped from asserting absolute control over the common areas in accordance with this Lease. Accordingly, Landlord has a special interest in preserving a specific tenant mix or balance in the Building (and the particular use of the Demised Premises and type and quality of merchandise described in Article 4) in order to maintain the uniformly high quality of tenants' inventories and to preserve the unique nature of the Building as a marketplace attractive to a particular kind of clientele.  Landlord also has a special interest in ensuring: (i) that any proposed transferee will provide adequate assurances as to a continuous use of the Demised Premises pursuant to this Lease and an ability to perform all obligations pursuant to this Lease, including, without limitation, all financial obligations; and (ii) that any proposed transfer will not breach restrictive provisions in other leases with respect to the Building, including, without limitation, provisions as to location or use.

Section 33.06.     All advertising literature, brochures and promotional material which is issued and/or distributed by Tenant or any other occupant during the term and which indicates Tenant's or such occupant's address as 979 Third Avenue will include, in referring thereto, either "D&D Building" or "Decoration and Design Building." Tenant shall not use the pictures of the Building in advertising or any other publicity or for any other purpose without Landlord's prior consent.  All advertisement or other publicity in any non-trade publication or other medium shall specifically and conspicuously state that sales are to the trade only.

Section 33.07.     Tenant agrees to cooperate with Landlord in connection with any building marketing or promotional plan.

55

# ARTICLE 34

## Certain Rights Reserved By Landlord

Landlord shall have the following rights, to be reasonably exercised and exercisable without notice and without liability to Tenant for damages or injury to property, person or business and without effecting an eviction, constructive or actual, or disturbance of Tenant's use or possession or giving rise to any claim for set-off or abatement of rent:

(a)    To install, affix and maintain any and all signs on the exterior and interior of the Building (other than those on the interior of the Demised Premises, which Tenant may install, etc.).

(b)    To designate and approve, prior to installation, all types of window shades, blinds, drapes, awnings, window ventilators and other similar equipment, and to approve all internal lighting that may be visible from the exterior of the Building, which approval will not be unreasonably withheld, delayed or conditioned.

(c)    To reserve to Landlord the exclusive right to designate, limit, restrict and control any business or any service in or to the Building and its tenants (excepting Tenant's rights as expressly provided for in this Lease).

(d)    To grant to anyone the exclusive right to conduct any business or render any service in or to the Building, provided such exclusive right shall not operate to exclude Tenant from the use expressly permitted herein.

(e)    To prohibit the placing of vending or dispensing machines of any kind in or about the Demised Premises (other than beverage service for the exclusive use by Tenant, its employees, agents, contractors and invitees).

(f)    To close the Building after regular working hours and on Saturdays, Sundays and holidays subject, however, to Tenant's right to admittance under such regulations as Landlord may prescribe from time to time, which may include, without limitation, that persons entering or leaving the Building identify themselves to a security officer by registration or otherwise and that said persons establish their right to enter or leave the Building.

(g)    To change the character or use of any part of the Building or the Land.

(h)    To use for itself the roof, the exterior portions of the Demised Premises and such areas within the Demised Premises required for structural columns and their enclosures and the installation of utility lines, Building

56

systems and other installations required to service the Building, the Land or tenants or occupants thereof; and to maintain and repair the same and, unless otherwise specifically provided herein, to exercise for itself all rights to the Land and improvements below the floor level of the Demised Premises or the rights above the Demised Premises and to the Land and improvements located on and within the public areas. Except in conjunction with work approved by Landlord, neither Tenant nor its employees, invitees, guests and agents shall: (i) go above or through suspended ceilings; (ii) remove any ceiling tiles or affix anything thereto, remove anything therefrom or cut into or alter the same in any way; (iii) tie or wedge open stairway doors; (iv) enter fan rooms, electrical closets, telephone rooms, or other mechanical spaces; or (v) open doors or remove panels providing access to utility lines, Building systems or other installation required to service tenants.

(i)     Intentionally deleted.

(j)     To enter the Demised Premises for the purpose of inspecting for general condition and state of repair or effecting repairs   or modifications for the benefit of Landlord, Tenant or other tenants of the Building. The holder of any mortgage, its agents or designees, shall have the same right of entry for inspection as Landlord.

# ARTICLE 35

## Captions

The captions of Articles in this Lease are inserted only as a matter of convenience and for reference and they in no way define, limit or describe the scope of this Lease or the intent of any provision thereof.

# ARTICLE 36

## Inability to Perform

Tenant's obligation to pay minimum rent and additional rent and to perform all of the other terms, covenants and conditions of this Lease shall not be affected, diminished, or excused if, by reason of unavoidable delays (as hereinafter defined), Landlord fails or is unable to supply any services or make any repairs or perform any work which under this Lease Landlord has expressly agreed to supply, make or perform, and the time for the performance or observance thereof shall be extended for the period of time as Landlord shall have been so delayed.

The words "unavoidable delays", as used in this Lease shall mean (a) the enactment of any law or issuance of any governmental order, rule or regulation (i)

57

prohibiting or restricting performance of work of the character required to be performed by Landlord under this Lease, or (ii) establishing rationing or priorities in the use of materials, or (iii) restricting the use of labor, and (b) strikes, lockouts, acts of God, inability to obtain labor or materials, enemy action, civil commotion, fire, unavoidable casualty or other similar types of causes beyond the reasonable control of Landlord.

## ARTICLE 37

### No Representations by Landlord

Neither Landlord nor any agent or employee of Landlord has made any representation whatsoever with respect to the Demised Premises except as expressly set forth in this Lease.

## ARTICLE 38

### Rent Control

Section 36.01.     In the event the minimum rent and/or additional rent or any part thereof provided to be paid by Tenant under the provisions of this Lease during the demised term shall become uncollectible or shall be reduced or required to be reduced or refunded by virtue of any federal, state, county or city law, order or regulation, or by any direction of a public officer or body pursuant to law, or the orders, rules, code or regulations of any organization or entity formed pursuant to law, Tenant shall enter into such agreement(s) and take such other steps (without additional expense or liability to Tenant) as Landlord may reasonably request and as may be legally permissible to permit Landlord to collect the maximum rents which from time to time during the continuance of such legal rent restriction may be legally permissible (and not in excess of the amounts reserved therefor under this Lease). Upon the termination of such legal rent restriction, (a) the minimum rent and/or additional rent shall become and thereafter be payable in accordance with the amounts reserved herein for the periods following such termination, and (b) Tenant shall pay to Landlord promptly upon being billed, to the maximum extent legally permissible, an amount equal to (i) minimum rent and/or additional rent which would have been paid pursuant to this Lease but for such legal rent restriction less (ii) the rents paid by Tenant during the period such legal rent restriction was in effect.

# ARTICLE 39

## Security Deposit

Section 39.01.      Concurrently with the execution of this Lease, Tenant shall deposit with Landlord the sum of $50,000.00, by Letter of Credit as provided in Section 39.02, as security for the faithful performance and observance by Tenant of the terms, provisions and conditions of this Lease.  Tenant agrees that, in the event that Tenant defaults in respect of any of the terms, provisions and conditions of this Lease (including the payment of minimum rent and additional rent), after any applicable notice and expiration of any applicable cure period, Landlord may notify the "Issuing Bank" (as such term is defined in Section 39.02) and thereupon receive all of the monies represented by the said Letter of Credit and use, apply, or retain the whole or any part of such proceeds, as the case may be, to the extent required for the payment of any minimum rent, additional rent, or any other sum as to which Tenant is in default, or for any sum that Landlord may expend or may be required to expend by reason of Tenant's default, in respect of any of the terms, covenants and conditions of this Lease (including any damages or deficiency accrued before or after summary proceedings or other re-entry by Landlord).  In the event that Landlord applies or retains any portion or all of the proceeds of such Letter of Credit Tenant shall, within five (5) days after demand by Landlord, restore the amount so applied or retained so that, at all times, the amount deposited shall be $50,000.00.  Upon Tenant's making such additional deposit, Landlord is hereby authorized to act as Tenant's agent to use the proceeds of the Letter of Credit to obtain a new Letter of Credit and Tenant hereby irrevocable appoints Landlord as Tenant's agent and attorney-in-fact to obtain a replacement Letter of Credit from the Issuing Bank or any other qualifying bank (such qualifying bank shall then be the Issuing Bank).  If Tenant shall fail or refuse to make such additional deposit, Landlord shall have the same rights in law and in equity and under this Lease as it has with respect to a default by Tenant in the payment of minimum rent.  In the event that Tenant shall fully and faithfully comply with all of the terms, provisions, covenants and conditions of this Lease, the cash security or Letter of Credit, as the case may be, shall be returned to Tenant within twenty (20) days after the expiration date and after delivery of possession of the entire Demised Premises to Landlord in the condition provided in this Lease for such delivery of possession.

Section 39.02.      Such letter of credit (the "Letter of Credit") shall be a clean, irrevocable and unconditional Letter of Credit issued by and drawn upon any commercial bank (the "Issuing Bank") with offices for banking purposes in the City of New York and having a combined capital and surplus of not less than $500,000,000.00, which Letter of Credit shall have an initial term of not less than one year or thereafter having a term expiring not less than ninety (90) days following the expiration of the term of this Lease, shall permit multiple drawings, shall be transferable by the beneficiary at one or more occasions at no charge to the beneficiary and otherwise be in form and content satisfactory to Landlord, be for the

59

account of Landlord and be in the amount of $50,000.00. Notwithstanding the foregoing, if at any time the combined capital and surplus of the Issuing Bank is less than $500,000,000.00 or its rating is downgraded from its current rating, and provided Tenant does not replace the existing Letter of Credit with a Letter of Credit meeting the criteria of Section 39.02 within the sooner of thirty (30) days following Tenant's receipt of Landlord's notice to Tenant of either of the foregoing events or the number of days remaining until the expiration date of the existing Letter of Credit, Landlord shall have the right, at any time thereafter, to draw down the entire proceeds pursuant to the terms of Section 39.01 as cash security pending the replacement of such Letter of Credit. The Letter of Credit shall provide that:

(a) the Issuing Bank shall pay to Landlord or its duly authorized representative an amount up to the face amount of the Letter of Credit upon presentation of the Letter of Credit and a sight draft, in the amount to be drawn;

(b) it shall be deemed automatically renewed, without amendment, for consecutive periods of one (1) year each thereafter during the term of this Lease, unless Issuing Bank sends written notice (hereinafter referred to as the Non-Renewal Notice) to Landlord by certified or registered mail, return receipt requested, not less than sixty (60) days next preceding the expiration date of the Letter of Credit that it elects not to have the Letter of Credit renewed, and it being agreed that the giving of such Non-Renewal Notice shall for the purpose of this Article 39 be deemed a default under this Lease, unless Tenant replaces the Letter of Credit with a substitute Letter of Credit meeting the criteria of this Section 39.02 or with a cash deposit at least thirty (30) days prior to the expiration date of the Letter of Credit.

(c) Landlord, subsequent to its receipt of a Non-Renewal Notice, and prior to the expiration date of the Letter of Credit, shall have the right, exercisable by means of sight draft, to receive the monies represented by the Letter of Credit and hold such proceeds pursuant to the terms of Section 39.01 as cash security pending the replacement of such Letter of Credit; and

(d) upon Landlord's sale or assignment of its estate as Tenant under any ground or underlying lease, the Letter of Credit shall be transferable by Landlord, as provided in Section 39.03.

Section 39.03.    In the event Landlord's estate as tenant under any ground or underlying Lease is sold or assigned, Landlord shall have the right to transfer the cash security or the Letter of Credit then held by Landlord to the vendee or assignee, and Landlord shall thereupon be released by Tenant from all liability for the return of such cash security or Letter of Credit. In such event, Tenant agrees to look solely to the new Landlord for the return of said cash security or Letter of Credit. It is agreed that the provisions hereof shall apply to every transfer or assignment made of the cash security or Letter of Credit to a new Landlord.

Section 39.04.    Tenant covenants that it will not assign or encumber, or attempt to assign or encumber, the monies or Letter of Credit deposited hereunder as security, and that neither Landlord nor its successors or assigns shall be bound by any such assignment, encumbrance, attempted assignment, or attempted encumbrance.

Section 39.05.    The use of the security, as provided in this Article, shall not be deemed or construed as a waiver of Tenant's default or as a waiver of any other rights and remedies to which Landlord may be entitled under the provisions of this Lease by reason of such default, it being intended that Landlord's rights to use the whole or any part of the security shall be in addition to but not in limitation of any such other rights and remedies; and Landlord may exercise any of such other rights and remedies independent of or in conjunction with its rights under this Article.

# ARTICLE 40

## Late Payment Charges

If Tenant shall fail to pay any minimum rent or additional rent within five (5) days after its due date, Tenant shall pay a late charge of $.05 for each $1.00 which remains unpaid after such period to compensate Landlord for additional expense in processing such late payment of up to $250.00. In addition, if Tenant fails to pay any minimum rent or additional rent within ten (10) days after its due date, Tenant shall pay interest thereon from the date due until the date paid at the rate of one and one-half (1-1/2%) percent per month. If any check of Tenant in payment of any sum due under this lease, including but not limited to minimum rent and additional rent, fails to clear the bank, Tenant shall pay a charge of $100.00.

**IN WITNESS WHEREOF**, Landlord and Tenant have duly executed this Lease as of the day and year first above written.

**D&D BUILDING COMPANY LLC, Landlord**

By:  D&D Managing Co., Inc.
its managing member

By:  _____
Charles Steven Cohen, President

**DAVID SUTHERLAND SHOWROOMS - NEW YORK LLC, Tenant**

By:  _____
Name:  David Sutherland
Title:  Member/Manager

# CERTIFICATE OF ACKNOWLEDGMENT

STATE OF NEW YORK   )
                 : ss.:
COUNTY OF NEW YORK )

        On the    day of           in the year 2005 before me, the undersigned, a Notary Public in and said State, personally appeared Charles Steven Cohen, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
               Notary Public

STATE OF *Texas*   )
                 : ss.:
COUNTY OF *Dallas* )

        On the *5* day of *April*    in the year 2005 before me, the undersigned, a Notary Public in and said State, personally appeared *DAVID SUTHERLAND* personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
              Notary Public

63

## SCHEDULE A

### Floor Plan



64

## SCHEDULE B

## Initial Improvements
## (Tenant's Work)

1.    Tenant accepts the Premises in their "as is" condition on the Commencement Date hereof.

2.    Tenant shall provide to Landlord for its approval complete architectural and mechanical plans and specifications in form for filing with and acceptance by the New York City Department of Buildings, prepared by an architect that has been approved by Landlord, showing all Improvements that Tenant proposes to install to ready the Demised Premises for its initial occupancy. Landlord agrees to approve or disapprove of the plans within fourteen (14) business days of submission by Tenant. Landlord's approval of such plans and specifications shall not be unreasonably withheld, provided (a) they comply with Legal Requirements, (b) such plans and specifications are sufficiently detailed to allow construction of the Improvements in a good and workmanlike manner, (c) the Improvements depicted thereon conform to the rules and regulations promulgated from time to time by Landlord for the construction of Improvements, and (d) the Improvements are non-structural, do not affect the exterior of the Demised Premises or the Building, do not affect other tenants, do not affect the HVAC, electrical, mechanical, plumbing or any other system serving the Building or the Demised Premises, and do not violate the provisions of any mortgage covering the Building or the Net Lease. If Landlord shall not approve any plans and specifications, it shall notify the Tenant of the revisions it requires within the foregoing fourteen (14) business day period. If Landlord fails to respond within the foregoing fourteen (14) business day period, Landlord will be deemed to have approved the revised plans. Within fourteen (14) days after being so informed by Landlord, Tenant shall submit revised plans and specifications incorporating such revisions. Landlord shall have ten (10) business days to approve or disapprove the revised plans. If Landlord fails to respond timely, the plans will be deemed approved. If disapproved, Tenant shall again revise the plans within ten (10) business days and resubmit. The process shall continue with Tenant revising and resubmitting until the plans are approved, or deemed approved. At such time as Landlord approves the plans and specifications, or is deemed to have done so, same shall constitute the "Final Plans." Tenant shall, at Landlord's request, sign the Final Plans to evidence its review and approval thereof. All changes in the Final Plans must receive the prior approval of Landlord. Tenant shall, upon completion of the Improvements, furnish Landlord with an accurate, reproducible "as-built" plan of the Improvements as constructed in both paper and electronic formats.

3.    Upon approval of the Final Plans, Tenant shall cause the initial Improvements to be constructed in accordance with the Final Plans with all diligence.

All work shall be performed in accordance with Article 5. At the time Tenant submits the initial plans and specifications, it shall submit its architect's reasonable estimate of the date by which the initial Improvements shall be substantially completed. The architect's estimate shall be subject to Landlord's approval (which approval shall not be unreasonably withheld). It shall be an Event of Default under this Lease if Tenant has not substantially completed the Initial Improvements on or before the date so estimated by its architect and approved by Landlord.

4.      Tenant shall bear the entire cost of performing the initial Improvements including, without limitation, preparation of plans and specifications, costs of construction labor and materials, electrical usage during construction, additional janitorial services, general tenant signage, related taxes and insurance costs, and the costs of all filings required by Governmental Requirements.

66

## SCHEDULE C

## Rules and Regulations

1.    The rights of tenants in the entrances, corridors, elevators and escalators of the Building are limited to ingress to and egress from the tenants' premises for the tenants and their employees, licensees and invitees, and no tenant shall use, or permit the use of, the entrances, corridors, escalators or elevators for any other purpose. No tenant shall invite to the tenant's premises, or permit the visit of, persons in such numbers or under such conditions as to interfere with the use and enjoyment of any of the plazas, entrances, corridors, escalators, elevators and other facilities of the Building by other tenants. Fire exits and stairways are for emergency use only, and they shall not be used for any other purposes by the tenants, their employees, licensees or invitees. No tenant shall encumber or obstruct, or permit the encumbrance or obstruction of any of the sidewalks, plazas, entrances, corridors, escalators, elevators, fire exits or stairways of the Building. The Landlord reserves the right to control and operate the public portions of the Building and the public facilities, as well as facilities, furnished for the common use of the tenants, in such manner as it deems best for the benefit of the tenants generally.

2.    The cost of repairing any damage to the public portions of the Building or the public facilities or to any facilities used in common with other tenants, caused by a tenant or the employees, licensees or invitees of the tenant, shall be paid by such tenant.

3.    The Landlord may refuse admission to the Building at any time to any person not having a pass issued by the Landlord, and may require all persons admitted to or leaving the Building at any time to register.  Tenant's employees, agents and visitors shall be permitted to enter and leave the building during and after ordinary business hours, subject to the reasonable requirements of Landlord.  Each tenant shall be responsible for all persons for whom he requests such permission and shall be liable to the Landlord for all acts of such persons.  Tenant shall obtain identification cards to be issued by Landlord for each employee and shall pay the Landlord's Building standard charge therefor.  Any person whose presence in the Building at any time shall, in the reasonable judgment of the Landlord, be prejudicial to the safety, character, reputation and interests of the Building or its tenants may be denied access to the Building or may be rejected therefrom.  In case of invasion, riot, public excitement or other commotion the Landlord may prevent all access to the Building during the continuance of the same, by closing the doors or otherwise, for the safety of the tenants and protection of property in the Building. The Landlord may require any person leaving the Building with any package or other object to exhibit a pass from the tenant from whose premises the package or object is being removed, but the establishment and enforcement of such requirement shall not impose any responsibility on the Landlord for the protection of any tenant against the removal of property from the premises of the tenant.  The Landlord shall, in no way, be liable to

any tenant for damages or loss arising from the admission, exclusion or ejection of any person to or from the tenant's premises or the Building under the provisions of this rule.

4.    No tenant shall obtain or accept for use in its premises towel, barbering, boot blacking, floor polishing, cleaning or other similar services from any persons not authorized by the Landlord in writing to furnish such services, provided always that the charges for such services by persons authorized by the Landlord are not excessive. Such services shall be furnished only at such hours, in such places within the tenant's premises and under such reasonable regulations as may be fixed by the Landlord.

5.    No awnings or other projections over or around the windows shall be installed by any tenant, and only such window blinds as are supplied or permitted by the Landlord shall be used in a tenant's premises.

6.    There shall not be used in any space, or in the public halls of the Building, either by the Tenant or by jobbers or others, in the delivery or receipt of merchandise, any hand trucks, except those equipped with rubber tires and side guards.

7.    All entrance doors in each tenant's premises shall be left locked when the tenant's premises are not in use. Entrance doors shall not be propped open at any time. All windows in each tenant's premises shall be kept closed at all times and all blinds therein above the ground floor shall be lowered when and as reasonably required because of the position of the sun, during the operation of the Building air conditioning system to cool or ventilate the tenant's premises.

8.    No noise, including the playing of any musical instruments, radio or television, which, in the reasonable judgment of the Landlord, might disturb other tenants in the Building shall be made or permitted by any tenant, and no cooking shall be done in the tenant's premises, except for heating by microwave, beverage service or otherwise as expressly approved by the Landlord. Nothing shall be done or permitted in any tenant's premises, and nothing shall be brought into or kept in any tenant's premises, which would impair or interfere with any of the Building services or the proper and economic heating, cleaning or other servicing of the Building or the premises, or the use or enjoyment by any other tenant of any other premises, nor shall there be installed by any tenant any ventilating, air conditioning, electrical or other equipment of any kind which, in the judgment of the Landlord, might cause any such impairment or interference. No dangerous, flammable, combustible or explosive object or material shall be brought into the Building by any tenant or with the permission of any tenant.

9.    Tenant shall not permit any cooking or food odors emanating within the Demised Premises to seep into other portions of the Building.

68

10.     No acids, vapor or other materials shall be discharged or permitted to be discharged into the waste lines, vents or flues of the Building which may damage them.  The water and wash closets and other plumbing fixtures in or serving any tenant's premises shall not be used for any purpose other than the purpose for which they were designed or constructed, and no sweepings, rubbish, rags, acids or other foreign substances shall be deposited therein.  All damages resulting from any misuse of the fixtures shall be borne by the tenant who, or whose servants, employees, agents, visitors or licensees, shall have caused the same.

11.     No signs, advertisement, notice or other lettering shall be exhibited, inscribed, painted or affixed by any tenant on any part of the outside of the premises or the Building without the prior written consent of the Landlord.  In the event of the violation of the foregoing by any tenant, Landlord may remove the same without any liability, and may charge the expense incurred by such removal to the tenant or tenants violating this rule.   Interior signs and lettering on doors and elevators shall be inscribed, painted, or affixed for each tenant by Landlord at the expense of such tenant, (the charge not to exceed that which a reputable outside contractor would charge), and shall be of a size, color and style reasonably acceptable to Landlord.  Landlord shall have the right to prohibit any advertising by any tenant which mentions the Building and which impairs the reputation of the building or its desirability as a building for offices, and upon written notice from Landlord, Tenant shall refrain from or discontinue such advertising.

12.     Duplicate keys for a tenant's premises and toilet rooms shall be procured only from the Landlord, which may make a reasonable charge therefor.  Upon the termination of a tenant's lease, all keys of the tenant's premises and toilet rooms shall be delivered to the Landlord.

13.     No tenant shall mark, paint, drill into or in any way deface any part of the Building or the premises demised to such tenant, other than to hang pictures and the like.  No boring, cutting or stringing of wires shall be permitted, except with the prior written consent of Landlord, which will not be unreasonably withheld or delayed, and as Landlord may reasonably direct.  No tenant shall install any resilient tile or similar floor covering in the premises demised to such tenant except in a manner reasonably approved by Landlord.

14.     No tenant shall use or occupy, or permit any portion of the premises demised to such tenant to be used or occupied, as an office for a public stenographer or typist, or as a barber or manicure shop, or as an employment bureau.  No tenant or occupant shall engage or pay any employees in the Building, except those actually working for such tenant or occupant in the Building, nor advertise for laborers giving an address at the Building, except those actually working for tenant.

15.     No premises shall be used, or permitted to be used, at any time, as a store for the sale or display of goods, wares or merchandise of any kind, or as a

69

restaurant, shop, booth, bootblack or other stand, or for the conduct of any business or occupation which predominantly involves direct patronage of the general public in the premises demised to such tenant, or for manufacturing or for other similar purposes.

16.     The requirements of tenants will be attended only upon application at the office of the Building. Employees of Landlord shall not perform any work or do anything outside of the regular duties, unless under special instructions from the office of the Landlord.

17.     Each tenant shall provide artificial light in the premises demised to such tenant for Landlord's agents, contractors and employees while performing janitorial or other cleaning services and making repairs or alterations in said premises.

18.     The tenant's employees shall not loiter around the hallways, stairways, elevators, front, roof or any other part of the Building used in common by the occupants thereof.

19.     If the premises demised to any tenant become infested with vermin, and provided such condition has been caused by the tenant, such tenant, at its sole cost and expense, shall cause its premises to be exterminated, from time to time, to the satisfaction of Landlord, and shall employ such exterminators therefor as shall be approved by Landlord.

20.     No bicycle or other vehicle and no animals shall be allowed in the showrooms, offices, halls, corridors or any other parts of the Building.

21.     Tenant shall not, without Landlord's prior written consent, install or operate any refrigerating or air conditioning equipment, steam or internal combustion engine, boiler, stove, machinery or mechanical devices upon the premises (other than a microwave, beverage service or refrigerator) or carry on any mechanical or manufacturing business thereon, or use or permit to be brought into the Building flammable fluids such as gasoline, kerosene, benzene or naphtha or use any illumination other than electric lights. All equipment, fixtures, lamps and bulbs shall be compatible with, and not exceed the capacity of the Building's electric system. No explosives, firearms, radioactive or toxic or hazardous substances or materials, or other articles deemed hazardous to life, limb or property shall be brought into the Building or the Premises (other than those customary and usual to a general office use, i.e., toner for copies and general cleaning agents).

22.     Tenant must list all furniture and fixtures to be taken from the Building upon a form approved by Landlord. Upon the request of Landlord, such list shall be presented at the office of the Building for approval before acceptance by the security officer or elevator operator.

23.    Tenant, its customers, invitees, licensees, agents, servants, employees and guests shall not encumber or obstruct sidewalks, entrances, passages, courts, vestibules, halls, elevators, stairways or other common areas in or about the Building.

24.    Tenant shall not allow anything to be placed against or near the glass in the partitions between the premises and the halls or corridors of the Building which shall diminish the light in the halls or corridors.

25.    Upon termination of this Lease, Tenant shall surrender all keys of the premises and of the Building and give to Landlord the explanation of the combination of all locks on safes or vault doors in the Premises.

26.    Tenant shall provide the Building Manager with keys to all locks on any doors of the premises.  The Building Manager shall be allowed admittance to the premises in the event of any emergency, fire or other casualty that may arise in other appropriate instances.

27.    Unless otherwise advised by Landlord, neither Tenant nor its employees shall undertake to regulate the radiator controls of thermostats.  Tenant shall report to the office of the Building whenever such thermostats or radiator controls are not working properly or satisfactorily.

28.    All window treatments that are visible from the street shall be subject to Landlord's approval.

29.    Tenant assumes full responsibility for protecting its space from weather, theft, robbery and pilferage, which includes keeping doors locked and other means of entry into the premises closed and secured.

30.    Tenant shall not sell food of any kind or cook in the Building. Tenant may serve complimentary foods to its guests provided that it shall first comply with all Legal Requirements.

31.    Water in the premises shall not be wasted by Tenant or its employees by tying or wedging back the faucets of the washbowls or otherwise.

32.    All messengers shall be required to sign in and obtain a pass from either the front desk or the elevator starters.  Contractors and other workmen shall use only the freight elevators for all movement within the Building.

33.    Landlord reserves the right at any time, to install a message/package center in an area in the Building designated by Landlord and reasonably accessible to and for the common use of the tenants, and tenants shall comply with the procedures for the same set forth by the Landlord.

71

34.    Landlord shall not be required to provide cleaning or janitorial services in the Premises. Tenant, at its own cost, may utilize its own employees or outside contractors to perform janitorial or cleaning services in the Premises, provided such employees or outside contractors do not cause any labor disruption, dispute or disturbance in or around the Building or violate Landlord's union contracts affecting the Building. If Tenant shall require cleaning or janitorial services, Tenant may award a contract for such services to any contractor that is approved by Landlord; provided however, that prior to making such award, Tenant shall inform Landlord of the terms upon which such contractor shall provide such services and, in the event that Landlord's designated contractor can provide such services on equal or better terms, Tenant shall award such contract to Landlord's designated contractor.    Tenant shall pay for the cost of the services performed by such designated contractor within ten (10) days after being billed.  However, Tenant must retain Landlord for cleaning of all Tenant's windows (inside and outside) facing the public corridors, which shall be at Tenant's sole expense at the then prevailing rate.

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x     Index No.:  08 CV
ARTHUR BELFIORE,                          2365

                 Plaintiff,

         v.                               AFFIDAVIT OF SERVICE

979 THIRD AVENUE ASSOCIATES, LLC, D&D
BUILDING COMPANY, LLC, COHEN BROTHERS
REALTY CORPORATION AND TRICON CONSTRUCTION
SERVICES, INC.,

                 Defendants.
------------------------------------x
------------------------------------x     Index No.:
979 THIRD AVENUE ASSOCIATES, LLC, D&D
BUILDING COMPANY, LLC, COHEN BROTHERS
REALTY CORPORATION,

                 Third-Party
                 Plaintiffs,

         v.

DAVID SUTHERLAND SHOWROOMS - NEW YORK LLC,

                 Third-Party Defendant,
------------------------------------x

STATE OF NEW YORK          )
                            ss.
COUNTY OF NEW YORK         )
```

Maria Sanjose, being duly sworn, deposes and says:

1. That I am over the age of eighteen years and not a party to this action and reside in the City of Brooklyn, County of Kings and the State of New York.

2. That on May 7, 2008, I served upon:

Wagner & Wagner, LLP
Attorneys for Plaintiff, Arthur Belfiore
2508 Amboy Road
Staten Island, New York 10306

Abrams, Gorelick, Friedman & Jacobson, PC
Attorneys for Defendant
Tricon Construction Services, Inc.
One Battery Park Plaza, 4th Floor
New York, New York 10004

a true copy of the annexed **THIRD-PARTY SUMMONS AND THIRD-PARTY COMPLAINT** by depositing them endorsed in a postpaid properly addressed wrapper, in a post office or, official depository under the exclusive care and custody of the United States Postal Service within the State of New York, at the address designated by him or her upon the last paper served by him or her in the action.

DATED:     May 7, 2008
           New York, New York

_____
                         Maria Sanjose

Sworn and subscribed
before me on May 7, 2008

_____
Notary Public

ARACELIS PINEIRO
NOTARY PUBLIC, State of New York
No. 01PI6122320
Qualified in Kings County
Commission Expires Feb. 7, 2009